UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN HAE KWON, D.O.,

    Petitioner,

v.                                                                                          Case No. 06-14825

SECRETARY OF THE ARMY,                                        HONORABLE AVERN COHN

    Respondent.

_____/

**MEMORANDUM AND ORDER
DENYING PETITION FOR WRIT OF HABEAS CORPUS**

I.  Introduction

This is a habeas case under 28 U.S.C. § 2241.  Petitioner, Captain Ryan Hae Kwon, D.O., filed an application for a writ of habeas corpus against the Secretary of the Army, asking the Court to overturn the denial of his application for discharge as a conscientious objector (CO).  The issues have been fully briefed; the parties orally argued the case on February 23, 2006, after which they filed supplemental papers.  The matter is now ready for decision.  For the reasons that follow, the petition will be denied.

II.  Background

A.  Petitioner's Medical Education

Petitioner is a doctor of osteopathy with graduate training in anesthesiology and a Captain in the United States Army.  He voluntarily joined the Army in 1998 after which he received an Army funded scholarship to attend medical school through the Army's Health Professions Scholarship Program.  As a condition of the Army subsidizing his

medical education, Petitioner signed a contract promising to serve on active duty in the Army for four years and remain in the Army reserve for four years thereafter. Petitioner attended Nova Southeastern University at Davie, Florida, from 1998 to 2002, graduating with a Doctor of Osteopathy degree. The Army paid approximately $106,000 for Petitioner's education. While in medical school, Petitioner served on active duty several times and performed clinical rotations at military medical facilities.

Prior to graduating from medical school, in 2001, the Army granted Petitioner a four year delay of his report date so he could complete residency training in anesthesiology upon his graduation. Petitioner attended an internship in osteopathic medicine for a year after his graduation, from July 2002 to June 2003 at Nassau Medical Center in New York. From September 2003 to September 2006, Petitioner attended postgraduate medical training in anesthesiology at Pontiac Osteopathic Hospital in Pontiac, Michigan.

B. Events Relating to Petitioner's Orders to Report and CO Application

1.

On September 21, 2005, while still completing his anaesthesiology training, Petitioner received an e-mail from a Colonel Childs, the Anesthesiology Consultant to the Surgeon General of the Army, discussing the assignment process for upcoming active duty service. The email discusses several topics, including assignments, medical centers, fellowships, deployments. Under a section entitled "Issues," Col. Childs wrote:

> Each year for the past four years we have had individuals bring up issues during their CA-3 year that prevented them from coming on active duty. One individual had depression so severe that he had to live with his parents and could not practice outside the State of New Jersey, another one could not handle the stress of acting independently and this past year, we had someone apply as a

conscientious objector. We are sensitive to issues that arise that might impact your ability to come into the Army, but, we ask that this be known to us as soon as possible. Once the Surgeon General approves to ODP, we are bound to support it. If we can't, it causes serious problems to adequately staff our hospitals. If you do not come on active duty and have a financial obligation, you will be required to pay those funds back to the Government.

AR at p. 64-65.

At some point after receipt of the e-mail, Petitioner had a phone conversation with Colonel Childs. He followed up the phone conversation with an e-mail to Colonel Childs on September 27, 2005, in which he requested the name and contact information of the individual who applied for CO status and stated he "still [has] a lot more questions about the process of filing as a [CO]. AR at p. 66.

On October 20, 2005, Petitioner received word from the Army that he was to report for active duty in the summer of 2006 upon the completion of his residency.

2.

On December 21, 2005, Petitioner submitted an application for CO status and requesting discharge from the Army.[1]

In order to qualify for CO status, Petitioner has the burden of proving that he is "conscientiously opposed to war in any form" that this opposition is "based upon my religious training and belief" and that "this objection is sincere." See Army Reg. 600-43, ¶; Hager v. Secretary of the Air Force, 938 F.2d 11449, 1454 (1st Cir. 1991). Individuals requesting CO status must sincerely object to participation of any kind of war in any form. Relevant factors include:

training in the home and church; general demeanor and pattern of conduct;

---

[1]By this time, Petitioner had retained his present attorney.

>participation in religious activities; whether ethical or moral conviction were gained through training, study, contemplation, or other activity comparable in rigor and dedication to the process by which traditional religious convictions are formulated; credibility of persons supporting the claim.

Army Reg. 600-43, ¶ 1-5.a. (5)(b). An individual seeking CO status must prove his/her status by clear and convincing evidence. Id. at ¶ 1-5.c.

As will be explained, the Army reviews an application for CO status in accordance with its regulations. The review culminates in a final decision issued by Army Conscientious Objector Review Board based on the administrative record created during the review process.

Petitioner's application stated in part that "[m]y beliefs recently became incompatible with military service. The thought and writing that have gone into the writing of these essays [for the application] have helped me to clearly determine, identify, and define by consciousness beliefs." AR at p. 89-90.

In accordance with Army regulations, Petitioner was initially interviewed by an Army chaplain and a psychiatrist.[2] The chaplain's report was unfavorable. The report states in part:

>[Petitioner] revealed his beliefs stem from a blend of religious traditions, Buddhism and Christianity. It is my opinion while he claims his religion dictates his sincere belief that he is a CO he does not convincingly substantiate his claim. He noted a documentary film regarding Vietnam, hearing a lecture presented by Gulf War veterans with accompanying photographs of individuals maimed by land mines, reading books and "feelings if uneasiness" over a period of two years has moved his to a strong belief that he is indeed a CO. While corresponding with a senior medical officer and peers within the anesthesia field he learned of CO status. The incongruence between his religious practice ad other external influences offer no convincing cohesiveness to substantiate his CO claim.

---

[2]The psychiatrist's evaluation is designed solely to measure the applicant's mental competence to participate in the CO process. Petitioner was found mentally competent.

AR at p. 46 (report of Daniel E. Harrison, Chaplain, Lieutenant Colonel, Deputy Staff Chaplain).

Petitioner was also interviewed by an investigating officer to whom he also submitted additional documentary evidence in support of his application. This included letters from doctors in Pontiac as well as a letter from Bishop Thomas J, Gumbleton of Detroit attesting to Petitioner's sincerity. The investigating officer recommended approval of the application. Unlike the chaplain, the investigating officer concluded that

> [Petitioner's] beliefs did not come as an epiphany, but over the course of a year, and after being subjected to accounts and photos of the current conflict in Iraq; and reflecting on his Christian beliefs and having these believes [sic] becoming fixed and rejecting the military.

AR at p. 39 (Report of David M. Wilson, MAJ, AG, Investigating Officer).

Thereafter, the application was reviewed by Petitioner's chain of command, a colonel and a brigadier general. Both recommended that the application be denied. The brigadier general stated in part:

> You state that your decision to apply for CO status was not the product of an epiphany. However, you provide only a vague and insincere description of how you came to this realization. Your packet indicated that you have had substantial exposure to the military and the effect of violence, and have a very religious upbringing., Yet you provide no evidence of your new found commitment to conscientious objection or its impact on your life other than joining a human rights group with you may or may not continue to participate. Furthermore, your decision was a surprise to those around you. The only thing clear in your packet was your dissatisfaction with not being assured an assignment to your hometown of Honolulu, Hawaii. Following this realization, and the realization that other medical officers were avoiding their military obligations by filing CO application, you followed suit. The strongest evidence of your sincerity you offer is your personal affirmation of sincerity. Nothing you have provided satisfied the burden of proof of clear and convincing evidence. Rather there is a strong basis in fact for a lack of sincerity and conviction.

AR at p. 11 (Report of John E. Sterling, Jr., Brigadier General, USA, Commanding).

The colonel similarly concluded:

> Although [Petitioner] began participating in the Health Professions Scholarship Program (HPSP) in 1998, he asserted in his application for CO status dated 21 December 2005 that "[m]y beliefs recently became incompatible with military service." The timing of his declaration coincided with the end of his medical training in anesthesiology in September 2006 and his approaching entry on active duty. As the basis for his alleged evolving thoughts on conscientious objection and the peaceful resolution of all conflicts, he cites his reviewing of a documentary on the Vietnam War and his attendance at lectures by medical personnel who have deployed to Iraq and Afghanistan. He has provided no other documentation other than his own statements to support his claim that his viewed evolved over time. His alleged religious reasons for conscientious objection appear vague and insincere. Further, nowhere does he articulate the rationale behind his alleged beliefs and offers only generic responses in his application. In addition, on 27 September 2005, [Petitioner] specifically asked his program manager to provide him with contact information for Dr., Lawrence Francowicz, a former HPSP participant who was recently successful in seeking CO status and discharge. As such, it is apparent that the manner in which he arrived at his states beliefs is not credible, and appears to be in a way to avoid his military commitment.

AR at p. 32 (Report of Robert T. Marsh, Col. AG, Commanding). In addition, the legal advisors for both the brigadier general and colonel reviewed Petitioner's application and also recommended it be rejected. See AR at p. 13-15 (Memorandum form Jerry J. Linn, COL, JA, Staff Judge Advocate) and AR at p. 22-23 (Memorandum from Matthew D. Ramsey, MAJ, JA, Chief, Military Law).

Petitioner's application was then considered by the Department of Army Conscientious Objector Review Board (DACORB or the Board). The Board considered the application and all of the accompanying reports. The Board consisted of a Staff Judge Advocate, a Staff Chaplain, and the DACORB President. All three recommended disapproval. The Staff Judge Advocate found that "[Petitioner] failed to demonstrate by clear and convincing evidence that he has a firm, fixed and sincere objection to participation in war in any form." The Staff Chaplain concluded that "[Petitioner's]

decision seems more based on circumstances than on conviction and belief. I do not see that he has a firm fixed objection to war in any form." The President similarly found: "This application reads as an opportunity gone awry as the [Petitioner] discovered the full consequences of his obligation and opted to flee his decision through a feigned CO application. His application lacks fundamental sincerity; his words lack credibility; and his beliefs appear hollow." The decision is dated November 14, 2006.

3.

On October 25, 2006, Petitioner filed the instant petition together with a request for a temporary restraining order. Although Petitioner's application for CO status had yet to be adjudicated by the Board, Petitioner was given orders to report to active duty at a military hospital in Tacoma Washington by October 26, 2006. Petitioner sought a temporary restraining order (TRO) preventing his deployment. The Court held a hearing on October 26, 2006 and denied the TRO and directed Petitioner to report. Thereafter, the Army filed a response to the petition. A hearing was held on February 23, 2006 at which time the Court directed Petitioner to file a supplemental paper detailing the "corroborating evidence" supportive of his application. The Court gave the Army an opportunity to respond to the supplemental filing, which it did.

III. Analysis

A. Standard of Review

The parties agree that judicial review of a conscientious objector application is limited to determining whether there is a "basis in fact" for the Board's decision to deny conscientious objector status. <u>Bohnert v. Flakner</u>, 428 F.2d 747, 751, (6th Cir. 1971). "It has been repeatedly held that the scope of review under the basis in fact test is one

of the narrowest known to the law." Id.  Nevertheless, courts have held:

> Although this standard of review is a narrow one, it is not toothless. A basis in fact will not find support in mere disbelief or surmise as to the applicant's motivation.  Rather, the government must show some hard, reliable, provable facts which would provide a basis for disbelieving the applicant's sincerity, or it must show something concrete in the record which substantially blurs the picture painted by the applicant.

Hager v. Secretary of the Air Force, 938 F.2d 1449, 1454 (1st Cir. 1991).  Therefore, in order to determine if a basis in fact exists, the court must "thoroughly examine the record and carefully scrutinize the logic and reasoning of the Board."  Reinhard v. Gorman, 471 F. Supp. 112, 113 (D.C. Cir. 1979).  This includes searching for affirmative evidence to support the DACORB findings, or "some proof that is incompatible with the applicant's claims."  Taylor v. Claytor, 601 F.2d 1102, 1103 (9th Cir. 1979).  However, "[w]here the board has relied on *objective* facts rather than mere subjective conclusions, . . . the court may not second-guess the board's interpretation of those facts or the weight it gives them, even though the board's decision appears to the court to be erroneous.  Bohnert, 438 F.2d at 751.  Finally, if the Secretary's conclusions are "boilerplate," i.e., simply a recitation of the statutory criteria, the court should look behind those conclusions and determine whether the bases for those conclusions are reasonably discoverable from the record, namely from the opinions and recommendations of the Secretary's subordinates.  Hager, 938 F.2d at1455.

### B.  Application of the Law to Petitioner

Based on a review of the administrative record, Petitioner has not demonstrated grounds for discharge by clear and convincing evidence.

### 1.

First of all, the timing of Petitioner's application raises a question as to his sincerity. Precedents state that the timing of a CO application alone cannot constitute a basis in fact for denial. For instance, in Shaffer v. Schlesinger, 531 F.2d 124, 130 (3d Cir. 1976), the Court of Appeals for the Third Circuit held that "[t]he cases are legion which hold that the timing of an application for conscientious objector status is not a sufficient basis in fact to support a finding of insincerity." Nonetheless, courts generally concede that questionable timing can be a relevant factor depending on the circumstances. As stated by the Court of Appeals for the First Circuit in Lobis v. Sec'y of the Air Force, 519 F.2d 304, 307 (1st Cir. 1975), "the sudden crystallizing of CO convictions upon receipt of an induction order or call to active duty may legitimately engender suspicion. Appellant's chronology was, as pointed out, remarkably convenient, and we would not deny this factor some evidentiary weight on the issue of sincerity." However, the court cautioned that "[s]omething more tangible than suspicion is needed to support a finding of insincerity." Id. The Third Circuit went on to hold that substantial weight may be given to the element of time if it is reinforced by other evidence. Id. As applied to the petitioner in Lobis, the Third Circuit concluded that there was an adequate explanation for the timing which was supported by additional evidence and as such, the timing did not weigh against the petitioner.

In Alhassan v. Hagee, 424 F.3d 518 (7th Cir. 2005), however, the Seventh Circuit permitted an adverse inference on the basis of questionable timing. In Alhassan, the applicant filed for CO status shortly after learning that his unit would soon deploy to Iraq. Although the applicant claimed that he developed his beliefs during boot camp, the court found it significant that he never told "his parents, girlfriend, or any of his superiors

9

at boot camp about his concerns. Alhassan did not raise this issue during his post-boot camp combat training or during his motor vehicle training." Alhassan, 424 F.3d at 523. Additionally, the applicant never disclosed any objections to war when he was informed of his upcoming deployment to Iraq. Instead, "[i]t was not until Alhassan had been at Camp Pendleton for approximately two weeks, and the possibility of deployment to Iraq became even more imminent, that he informed anyone in his chain of command that he had a conscientious objection." Id. As a result, the Seventh Circuit held that the timing of his application, in conjunction with his enlistment contract (stating that he did not have a conscientious objection to war) and his failure to disclose his beliefs until his imminent departure to Iraq, constituted a basis in fact for the Board's decision to deny his application. Id.

    Here, the timing of Petitioner's application is "remarkably convenient." As in Alhassan, Petitioner apparently never made any mention of his newfound beliefs until he applied for CO status. Indeed, the letters submitted in support of his application, although stating their belief that Petitioner is a sincere person, all indicated that they were surprised at his application for CO status. Also significant was Petitioner's admission that his beliefs essentially crystallized as he wrote his application. He states that "the thought and writing that have gone into the writing of these essays has helped me to clearly determine, identify and define my conscientious beliefs." AR at p. 89-90. Thus, Petitioner did not fully identify his beliefs until he began the application process. As the Army pointed out at the hearing, the application process for CO status is not intended to be a litmus test for being a CO; rather, the CO beliefs must be "firm, fixed and sincere" before the writing of the application. While not dispositive, the timing of the

application under these circumstances, including Petitioner's statements and lack of evidence that Petitioner communicated his CO beliefs to anyone prior to the application process itself lends support to the conclusion that the Army's decision has some basis in fact.

2.

Second, the administrative record reveals that only one individual, the interviewing officer, found Petitioner to be sincere and recommended approval of his application. Petitioner, of course, places great emphasis on the interviewing officer's decision and urges the Court to follow it. However, the Court cannot ignore the fact that the Chaplain who also interviewed Petitioner found that he lacked credibility. The competing opinions shows that reasonable minds can differ on assessing sincerity. It is significant also that everyone in Petitioner's chain of command and all the three members of DACORB all concluded that the application should be rejected. As demonstrated from the statements from the various personnel reviewing his application set forth above, the reasons for rejection were based on their review of material in the record, including Petitioner's application and accompanying materials. Their reasons indicate a basis in fact for rejecting the application.

3.

Third, Petitioner's evidence of lifestyle changes does not support his application. Petitioner reported that he recently joined a human rights organization, but did not elaborate on his involvement. Moreover, with this exception, all of the lifestyle changes he identified refer to occurrences after he filed his application, including anxiety over the process. The letters from his colleagues stated they were surprised to learn of his

application. Such evidence goes against a finding that Petitioner's "general demeanor and pattern of conduct" was consistent with a CO. The Court realizes that in general, courts place very little, if any, weight on lifestyle changes. This is especially true when the applicant concerns a physician. See Goldstein v. Middendorf, 535 F.2d 1339, 1343 (1st Cir. 1976); Hager, supra. Nevertheless, the lack of any real evidence of lifestyle changes militates against a finding that Petitioner is not sincere.

4.

Fourth, despite stating that he had a religious upbringing, Petitioner says that his CO beliefs crystallized when seeing "The Fog of "War" and reading the teachings of "The Power of Now: A Guide to Spiritual Enlightenment" and that Buddhism helped him realize the importance of peace. He also states that his attendance at an event where nurses discussed accounts of their deployment assignments overseas, and where he was shown graphic photos of people with disfigured and detached body parts helped formulate his beliefs. This latter event took place very near the time when he was notified of his requirement for active duty, which undercuts a finding of his sincerity. The viewing of a movie and reading a book, as the Army found, was not sufficient evidence to show Petitioner's beliefs were firm and fixed at the time of he filed the application. Indeed, the rigorous study and prayer Petitioner alludes to in his application concerns the study and prayer Petitioner was engaged in at the time of his application. It does not show that Petitioner engaged in a process involving any rigor or that his beliefs were firm and fixed at the time of application. Rather, the record established that it was the application process which solidified his beliefs.

5.

At the hearing, the Court directed Petitioner to detail the corroborating evidence supportive of his application. As noted above, Petitioner filed a supplemental paper to this effect and the Army responded. A review of the supplemental papers fails to support Petitioner's position. As noted by the Army, of the thirty-three purported corroborating facts listed by Petitioner, only three contain actual corroborating evidence: (1) the investigating officer's report, (2) the three letters of recommendation from his colleagues, and (3) the letter from Bishop Gumbleton attesting to Petitioner's sincerity. This evidence, however, does not cast doubt on DACORB's decision to deny Petitioner's application. As to the letters from Petitioner's colleagues, one of them does not mention conscientious objection at all and the other two letters express surprise at Petitioner's request for CO status. As noted by those in Petitioner's chain of command and the DACORB, these letters do not support a finding, necessary for CO status, that Petitioner's "general demeanor and pattern of conduct" in his daily life and interactions with people did not reflect his beliefs as to a CO. The testimony of Bishop Gumbleton is not particularly persuasive. Bishop Gumbleton is not a member of Petitioner's denomination and significantly, Petitioner does not mention Bishop Gumbleton in his application or quantify his interaction with him. The Staff Judge Advocate noted this disconnect and highlighted the apparent political motive behind the Bishop's testimony. See AR at p. 15. As to the investigating officer, clearly this is corroborating evidence, however, the investigating officer is the only individual who reviewed Petitioner's application that recommended CO status. The overwhelming majority of those who reviewed Petitioner's application concluded otherwise. The Court cannot say that the investigating officer's opinion is entitled to more weight or that it supports a finding that

13

all of the other opinions lack a basis in fact. As the Army notes, the investigating officer was one of the nine Army officials involved in the case and his opinion was not binding.

Petitioner also points to other facts regarding the Army assignment process. These facts, however, are not corroborating evidence. Petitioner asserts that by filing for CO status, he forego a position in Hawaii and was instead assigned to Ft. Lewis, Washington. There is no evidence to support this assertion and it is irrelevant to whether Petitioner is a CO. Petitioner also challenges the application process, noting that he was only interviewed by the investigating officer and the chaplain, thereby implying that the opinions of those who did not interview him are not credible. However, the Army complied with its regulations as to interviews and the fact that most of those who recommended disapproval of his application did not interview him in no way undercuts the reliability of those recommendations.

Petitioner also mentions the fact that he is facing the possibility of military disciplinary proceedings for failing to wear his combat uniform as support for his sincerity. Whatever consequences Petitioner faces as a result of his actions after the filing of his CO application are not relevant to the Court's inquiry which must be focused on the decision of the DACORB and whether there is a basis in fact for its decision.

IV.  Conclusion

In the end, Petitioner has only the application, which contains his self-declaration

14

as to his objection to war, and the recommendation of the investigating officer as support. This is not sufficient corroborating evidence to show that the DACORB's decision, which was in line with the recommendations of Army officials who reviewed it, did not have a basis in fact. As explained above, Petitioner's application lacked many of the essential elements of CO status. The investigating officer's recommendation, while favorable, does not automatically mean that his application should have been granted.

CO cases are not easy. The Court has only a limited role given the narrow standard of review. The cases must turn on the unique facts presented[3] in determining whether a decision to deny CO status has a basis in fact or that a petitioner's CO beliefs are sincere and sufficiently corroborated. Here, the record simply does not call for the conclusion that the DACORB's decision lacked a basis in fact.

Accordingly, the petition is DENIED.[4]

SO ORDERED.

---

[3] The Court is mindful of other cases which have been decided differently. In Hanna v. Secretary of the Army, 2006 WL 2925268 (D. Mass. Oct. 6, 2006), the Petitioner, Captain Hanna, also an anaesthesiologist represented by the same counsel as Petitioner, applied for CO status, was rejected, and filed a habeas petition. The record in this case, in contrast to Petitioner's, showed recommendations for approval from several Army officials and the DACORB's decision was split 2-1. The facts of the case were decidedly different from Petitioner; the district court carefully explained the corroborating evidence to support the application. The Army has appealed the district court's decision, which is pending before the Court of Appeals for the First Circuit. Most recently in Zabala v. Hagee, 2007 WL 963234 (N.D. Ca. Mar. 29, 2007), the Petitioner, a Marine Corps reservist attending college, was granted CO status by the district court. As in Hanna, several Marine officials in the chain of command recommended approval of the application and there was corroborating evidence in the record apart from the Petitioner's application.

[4] Petitioner also claims that the Army violated several regulations in the processing of his CO application. As explained in the Army's response to Petitioner's petition at pages 16-17, these claims are without merit.

15

         s/Avern Cohn
         AVERN COHN
         UNITED STATES DISTRICT JUDGE

Dated: April 9, 2007

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, April 9, 2007, by electronic and/or ordinary mail.

         s/Julie Owens
         Case Manager, (313) 234-5160